Thank you. May it please the Court. I'm Elizabeth Block. I'm here on behalf of the petitioner in this administrative appeal, Coeur Alaska, Inc., and with me is my law partner, Donna Pryor, who tried the case. And I intend to reserve three minutes for rebuttal, so I'll try to run through it quickly. There are nine safety citations at issue in this case, and they were issued under two different safety standards. And I certainly want to answer any questions the Court may have about any aspect of the case, but I intend to focus my short time with you this morning on the safety standard governing the ground support system. And that's Section 57.3360, and I'll shorthand that to 3360. Both safety standards at issue, though, they're part of the CFRs addressing ground control. And when you're talking about ground control in a mine, the ground is everything that surrounds the miner while he or she is underground. It's the floor, it's the walls or the ribs, and it's the roof as well, or the back of the mine. So there are two aspects of ground control. There's a ground support system, and those are things like rock bolts or timbers. There are other kinds of systems that can be in use, and those are installed to prevent cave-ins and roof falls in a mine. The other aspect of ground control is scaling. Scaling is an everyday activity in the mine where the miners use these bars or poles of various lengths, and what they do is they go around and look for possible loose rock on the walls or the roof, and they tap it, and if it looks like it'll break loose, they just knock it loose so that it falls in a controlled manner. On mesh. In parts of the mine. In parts of the mine, it doesn't fall on mesh. The mesh is not everywhere in the mine, and I'll get to that in just a moment. Ground support, the ground support system, in contrast to scaling, is not necessary in every mine. It depends on the actual ground conditions, and it's up to the mine operator to determine what type of ground support system, if one is necessary, it's up to the mine operator to determine what type of system should be in use. So in Coors Kensington Mine, the mine operator made the decision that rock bolts would be the appropriate ground support system, and that's the support system that's been in place in the mine since 1995. There's also wire mesh, as you mentioned, Judge B. There's also some wire mesh in the mine, but it's not part of the ground control system. And, in fact, wire mesh wasn't used at all in the mine until 2010, and it's not everywhere in the mine. Now, the only evidence from the miners' representatives, and remember, it's the mine operator that gets to decide what type of ground support system is appropriate, given the ground conditions in the mine. The only evidence from the mine representatives is that the wire mesh is there only as a convenience for the miners. And what it does is it reduces the need to scale, to knock down this potentially loose material. So what happens is where the wire mesh is present in the mine, and, again, it's not everywhere in the mine, it reduces the need to scale because what otherwise would have been knocked down by the miners with a scaling pole tends to accumulate behind the wire mesh. So is this all a lead-up to the fact that where there was mesh that had not been repaired, that doesn't mean it was necessary? Exactly. And that's the key. Oh, I'm just cutting to the chase. Let's get there. Let's get there. So for the seven citations that were issued under 3360, CORE was cited for failing to maintain the wire mesh, and that can be a violation of 3360 if there's a failure to maintain a necessary ground support system. But if you argue that you're just a super-safe person, that you put mesh everywhere, then you can't be penalized later if you don't repair mesh. But by virtue of the fact that you put the mesh, it doesn't mean it's necessary. Exactly. And that's the short-circuit conclusion that the ALJ came to. The wire mesh, in order, the failure to maintain the wire mesh can only be a violation of 3360 under the plain express language of that regulation if the wire mesh is a necessary part of the ground support system. And here it is not. And if you look at the language of 3360, and you can find that on page 12 of our brief, the first sentence tells us where ground support is necessary, and that's where ground conditions indicate that it's necessary. The second sentence tells us that when ground support is necessary, and again, it's up to the mind to determine what type of ground support system is going to be used. When ground support is necessary, it has to be designed, installed, and maintained in order to control the ground. So here the wire mesh was not chosen by the operator as part of the ground support system. It was not designed by the operator as part of the ground support system. It was not installed as part of the ground support system, and it doesn't need to be maintained as part of the ground support system. And that makes sense. If it's not part of the ground support system, you don't have to have the same level of vigilance to maintain it. And again, keep in mind the distinction between ground support, which is holding up the roof, and knocking down loose material that is a daily occurrence, and that's the scaling. That's a daily occurrence in the mind. If you think of a bridge analogy, I'm trying to come up with some good analogies. A bridge needs a support system, and there are different kinds. It might be held up by pillars, it might be a suspension bridge where the bar above it is holding it up. It's absolutely crucial to maintain those support systems, whatever that is. Now, there may be other things you should do. Is it your position that wire mesh can never be part of a ground support system?  So why couldn't the agency reasonably say, look, I think that this is part of your ground support system, and your client's response would be to say, no, it's not, that's not what we intended. Can't the agency reasonably say, in looking at the mine, that this appears to be part of the ground support system, because really, although it's for convenience, according to the operator, it actually is preventing rocks from falling and being a hazard? Let me answer that a couple of ways. First of all, it's clear, and they acknowledge this in their brief, that it is up to the mine operator to determine the appropriate ground support system. And it's undisputed that in this case, CORE determined that rock bolts were going to be the ground support system. So they don't get to come in and just second-guess that determination. If they are going to try to reach that conclusion, they have to supply a factual background, a factual basis for reaching that conclusion, and they didn't do that here. Well, that really wasn't my first part of my question. My first part of the question is, you say we made the determination that wire mesh would not be part of the ground support system. If the agency says no, we think actually the operator did make that choice. Of course, they'd have to support it with something, but couldn't they reasonably conclude that that was the choice made by the mine operator? That's a little bit stickier question, but that's not what happened here. What they did is the MSHA inspectors simply jumped to the conclusion that it was necessary ground support because it was there and because it happened to be doing its job of holding up some loose material that would otherwise have been scaled down. And similarly, the ALJ simply jumped to the conclusion, it's kind of a race ipsa type analysis, where it must be necessary because it was there. So there was no factual analysis that it was, in fact, part of the necessary ground support system. And let me tell you about the kinds of facts that would support a finding of what's necessary for ground support in a mine. The cases are very clear that if you're going to make that determination, it's got to be based on actual facts. The courts and the commission in their decisions talk about geological studies, scientific testing, monitoring data, and then physical aspects such as popping noises, cracks, fissures, a drummy sound in the roof. Those are the factual indicators that a ground support system may be necessary. We don't have any of those facts here. So there's nothing in the record to support any finding that ground support was needed at all in these areas, in the locations cited, and certainly no evidence to support a finding that the wire mesh was serving as the necessary ground support. And let me suggest this to you. Well, let me do two things. First of all, I encourage you to look at the White Pine copper case. It's cited in both briefs, both parties' briefs. There, the mine had, for a long time, used certain spacing of bars as its chosen ground support. But they decided in a new area they didn't need to use the same type of spacing of the bars, and they were cited for failure to use necessary ground support. Now, the commission upheld the ALJ's finding of necessity, but only based on the actual physical evidence of popping noises, drummy sound, the appearance of cracks and fissures. The commission, though, went further to specifically reject the ALJ's simple conclusion, not based on facts, but conclusion that because the brock bolting had been used as habit in other parts of the mine, it also needed to be there. So a finding of necessity and a finding that this particular system is part of that necessary ground support system has to be supported by factual evidence, and there's none here. And I suggest to you that the ultimate test of determining whether something is necessary or a necessary part of the ground support system is to ask what would happen if it wasn't there. And the ALJ even answered that question for us. In the record excerpt at 7, the ALJ noted, and I'm quoting here, without the wire mesh, the material would have to be scaled down or it could create a hazard. We agree with that. But the undisputed evidence in this record is that without the wire mesh that was serving as a convenience to reduce the need for scaling, without that wire mesh, the miners would have done their job and would have scaled it down. So we wouldn't have had a problem. We would not have had a hazard, because they would have done their job and scaled it down. So if you can remove something without incident, by definition that means it's not necessary. Well, did the ALJ, as far as the ALJ's four specially assessed penalties are concerned, you argue that the ALJ failed to describe aggravating circumstances and to consider mitigating circumstances in upholding these special assessments. But to make his high negligence findings, the ALJ did reject much of your supposed mitigating evidence because you were not following your own safety procedures. What's your best response to that? Well, I ask you to consider there were three MSHA inspectors, and one of the MSHA inspectors, one with most of the underground mining experience, issued only one citation, not for 3360, but for 3200. And he found mitigating circumstances. The other two inspectors looked at the same factors, the rehab program, the training that the miners received, the fact that there were no injuries here, there was no history of a ground fall in this case. The one inspector whose citation was vacated looked at those and said those were mitigating factors, and the others didn't. We submit that you don't have the kind of aggravating factors that would support a special assessment here. There are no other questions I will reserve. Thank you. May it please the Court, Emily Toler for the Secretary of Labor. The inspections in this case revealed obvious, severe, and pervasive damage to the wire mesh that was supposed to keep rock from falling on miners in this case. Loose rocks, some of which were over one foot square and weighed hundreds of pounds, were exerting so much force on the mesh that they were pushing the mesh out, they were perched near holes, and miners walked and worked underneath this damaged mesh every day. It should have been impossible to walk through the mine without replacing, or at the very least noticing, the damage to the mesh, but that's exactly what Kerr did. And Kerr's ignorance of these dangerous conditions jeopardized miners' lives, and the ALJ's findings in this case are amply supported by the evidence and should be upheld. I want to begin with presenting exactly the question on appeal here, which I think we agree on, but the question is not whether wire mesh was necessary ground support. The question is whether ground support in the mine was necessary at all. Kerr's position on this question has shifted a bit. At trial, it alleged and argued in its motion for a directed verdict that no support at all was needed. It's now changed its tune and has conceded that, at the very least, rock bolts are necessary ground support in this mine, and since that's been conceded under the plain language of Section 3360, the question is whether the ground support system itself has been designed, installed, and maintained to adequately support the ground. It was Misha's position, and the ALJ found, and substantial evidence supports the finding that the system was not. I think it's unambiguously clear from the record that, in fact, the wire mesh is an integral part of the mine's ground support system. As our brief explains in detail, Kerr's own ground support manual repeatedly refers to the wire mesh as parts of the ground support system. I refer, Your Honors, specifically to page 399 in the third volume of the excerpts of record, which states in part that support consists of two components, rock reinforcement, which are the bolts, and surface support, which are the plates, mats, and mesh. There are a number of excerpts on that page that I think are relevant, but it's clear that the mesh, which is installed by driving bolts through the mesh into the top of the mine, it's installed with the bolts. It is necessary to make sure that the whole thing functions together. That same page explains that surface support contains the rock between the rock reinforcement, which are the bolts, and that if surface support is lacking, the head of rock reinforcement becomes undermined and it cannot clamp the arch together. In other words, if the mesh isn't there, the rock bolts can't do their job, and the support system is not going to fail. Or if the mesh is not adequately maintained, then the rock bolts are going to fail and the whole support system is not going to do its job. Well, if you actually put mesh up, can you ever argue that you were just being super safe and it wasn't reasonably necessary? Yes, absolutely, but that's not this case. Instead, this case has not only Kerr's Ground Control Manual, which was, in effect, I believe it was written in 2012 and revised in 2013, and so it had been in effect for at least a couple years prior to the citations being issued in this case. It is absolutely conceivable that a mine might not need mesh to control the ground. A mine might not even need ground support at all, but that's not this case. And in this case, not only is the ground support manual evidence of this, what the inspectors saw is evidence that the wire mesh does more than just reduce the need for scaling. In virtually every place that the inspection party visited, the inspectors saw evidence of rock, loose rock, that had not just fallen on top of the mesh, but was pushing on it so hard that it was causing it to bulge out in places. The mesh had been torn, whether by equipment or through falls, and this was not small, not really dangerous material. There were some violations that involved smaller pieces of rock or less damage to the mesh, and those violations were properly designated as not significant and substantial or the result of moderate negligence. But some of the violations in this case involved much more serious conditions, which were very large pieces of rock, 12 by 16 by 18 inches, pieces of rock that weighed hundreds of pounds and were sitting on the edge of holes that were feet wide and long in some cases. And to suggest that the mesh isn't necessary to hold that material back or isn't part of the ground support system is, I think, it's difficult for me at least to understand. I also want to address what conditions are necessary to support a finding that ground support is necessary in a mine. Councilman Kerr has suggested that geological studies are necessary or monitoring is necessary, but what Kerr didn't quote to you is what the commission has actually held, which is that all relevant factors are relevant to determining whether ground support is necessary. That includes not just the things that Kerr identified, but also evidence of sloughed materials, which are pieces of rock that have slid off the ribs or roof, whether there are fractures in the rock, whether roof support has been installed in the mine's operating experience. And every single one of those factors was present in this case. The inspectors testified and took photographs of loose material that had already sloughed off the ribs or had fallen off the roof and was resting behind the mesh. The inspectors also testified that they saw cracks or fractured areas in the roof and ribs. And that testimony, as the commission has held, is itself substantial evidence when the judge credits it, which the judge did in this case. Additionally, the fact that Kerr did install the mesh with the roof bolts, that Kerr's ground control manual described the mesh as part of the ground support system and explained why it is necessary to keep the rock from falling in this case, that is the presence of roof support and also the mine's operating experience, which indicate and are substantial evidence supporting the judge's finding that ground support was necessary in this case, that wire mesh is part of the ground support system, and so it needed to be adequately maintained. Judge Roberts, I wanted to follow up on, I'm sorry, Judge Thomas, I wanted to follow up with one remark that you made, which was a distinction perhaps between Kerr's intent and the actual function that the wire mesh is performing. So even assuming that Kerr's intent was to install the wire mesh simply to reduce the scaling responsibilities of miners, although for the reasons that I've already discussed, I think the ground support manual at the very least gives the lie to that assertion, but even assuming that the mine's intent was to put it up for convenience, at some point the function of the mesh could become to perform roof support capabilities, and the practical consequences of that emphasis on function versus intent I think are really significant, because accepting Kerr's argument that the only thing that matters is why we think we put it up or why we say we put it up would mean that Kerr could put up wire mesh in accordance with this ground support manual, it could put it up knowing that its job is to support the roof and to do so so that the rock bolts, or then the roof bolts will also do their job, to say, well, we're just doing that as a matter of convenience, and then allow miners to rely on that mesh for, at this point I suppose it had been years that the miners had been relying on this mesh, and then say, well, we're going to allow that to fail, we have no obligation to maintain it. And I think that result is not only extremely dangerous to miners' safety and health, it's inconsistent with the purpose of the Mine Act, and I don't think it is a result that this Court should countenance. Can I ask you about the reasonably likely standard? On the significant and substantial question? Yes. The ASJ determined that the specific violations were reasonably likely to result in a safety hazard. Am I correct on that? Yes, for the violations that were found to be SNS. Okay. So, therefore, do we need to decide whether the lesser standard of could result standard applies? It's not necessary to decide this case, no. Why is that? Because the judge found even applying the more stringent is reasonably likely result was satisfied here. And so I think that simply as a matter of logic, a less stringent result would also necessarily be satisfied. I should also point out our brief erroneously states that, I think, five of the citations were affirmed as significant and substantial. That should actually be six, and so I wanted to point that out for the Court's information. But if we found it necessary to reach the actual standard, I want to make sure I understand your position. So under Mathis, I guess, originally you had four factors, and then the Fourth Circuit adopted those factors using Skidmore deference, and then the Secretary has now changed at least one of the factors. Am I reading that correctly? That's roughly correct. So where does that leave us if we have to reach the standard? I realize it's your position we don't, but if we do, what's your position? It's our position that under Chevron, or at the very least under Skidmore, the Secretary's interpretation of the statute, which is Section 814D, I believe, 3 U.S.C. 814D, that the question of, or the test for what's significant and substantial, should be a matter of the Secretary's interpretation that's given deference by the courts. And the Secretary's interpretation. Well, it did give deference, and then the Secretary changed the interpretation. I think the Secretary's interpretation did change after, well, I don't know that it changed. I think the Secretary has not challenged the Mathis test and doesn't do so here. The Secretary's interpretation, however, is simply consistent with the Fourth Circuit's interpretation and with the interpretation of two commissioners in the Newtown case, which is to take the Fourth Circuit at its word and to say that at Step 3 of the Mathis test, the existence of the hazard is assumed. And that at Step 2 of the Mathis test, the question is not whether there's a reasonable likelihood that the violation will contribute to a hazard, but whether the violation could contribute to a hazard. And that's consistent also with the commission's precedent up until Knox Creek. In the muscle engineering case, the commission explained that the test at Step 2, there is no requirement of reasonable likelihood at Step 2. And so, in fact, if an interpretation has changed here, there's maybe blame to go around on multiple sides. But ultimately, the Secretary's interpretation of what significant and substantial means is a matter of statutory interpretation, and so the Secretary's interpretation should receive deference. I'd like to turn, then, very briefly to the negligence questions. So what deference are you saying the Secretary should get on that? On the significant and substantial question? It is our position that Chevron deference is appropriate if the Court thinks that more substantial briefing is necessary on that question, because as you observed, the Fourth Circuit... Well, the Fourth Circuit applied Skidmore deference. Why wouldn't we apply Skidmore deference? Well, the Fourth Circuit reached that conclusion without the benefit of briefing from the parties, and I think that especially in light of the means by which the Fourth Circuit reached that conclusion, that if the Court wishes to address this issue in more depth, then I do think supplemental briefing would aid the Court's determination. Well, the argument on that is always that you want an administrative state, and you want us to say because we say so that that's what it is, and you want it at the highest standard. But when you change positions, that erodes on that deference, and there's a lot of question in the courts whether agencies are, you know, if the Supreme Court is going to allow agencies to enjoy the same kind of deference, and maybe this doublespeak is part of the reason. I agree that there certainly are questions, and obviously we follow those cases pretty closely, but I would respectfully disagree with the characterization of the Secretary's position in this case as changing positions. I think, as I mentioned, the Secretary has never, to my knowledge, directly challenged the Matthews criteria and is not doing so here. The Secretary is simply aligning his interpretation with what the Fourth Circuit has stated, which is that at Step 3, the existence of the hazard is assumed, and that Setup 2 of the Matthews test simply requires an inquiry into whether the hazard could, I'm sorry, the violation could contribute to the hazard. So I think that rather than arbitrarily changing its view and then demanding deference, this is simply a case of the Secretary incorporating what the Fourth Circuit has held and what the Commission, which also engages in interpretation of the Mine Act, though does not get deference in the courts of appeals, the Secretary does, but it's aligning the Secretary's interpretation with those decisions. And then briefly with respect to the negligence questions, as our brief explains in mock mining and in the Commission's decision cited in that case, it's clear that the Commission and its ALJs are not bound by MSHA's regulations and so are free to find high negligence even if mitigating circumstances did exist. The judge in this case found, one, that the mitigating circumstances as Kerr suggested, the rehab program and training, were not actually mitigating circumstances because they weren't effective. But even if the judge had found that they were mitigating circumstances, the judge still could have and appropriately did find that the violations resulted from high negligence. Kerr's representatives weren't able to identify mitigating factors with respect to at least some of the violations admitted that the conditions were bad. The judge found that these violations had existed for several shifts, at least with respect to the December 2014 citations Kerr had known for months this was an issue. And ultimately, the problem or the facts supporting the high negligence designations are that the damage was obvious, it was severe, and it was extensive. And any reasonable mine operator should have known about those conditions. I think by way of conclusion, the ALJ summed it up best when he found that Kerr's conduct represented a systematic disregard for the condition of wire mesh in the Kensington mine. And substantial evidence supports each of those findings, and Kerr's petition should be denied. Thank you, counsel. Just very briefly, the Secretary first argues that it's not, the question is not whether wire mesh is necessary ground support, it's whether ground support was necessary at all. But that avoids, it ignores the language of the regulation, which says there can only be a violation if there's a failure to maintain a necessary ground support system. So in order for there to be a violation, the wire mesh has to be part of that necessary ground support system. And here it's not. The wire mesh was not designed as ground support, it was not installed as ground support, and it need not be maintained as ground support. You don't get to jump to the third step and say failure to maintain something is a violation of 3360, even if it wasn't designed for that purpose or installed for that purpose. You don't get to do that. They mention the ground control manual. I'd simply point out that the portions they cite are general statements of what should be considered, but the preface of the ground control manual also says you've got to look at specific conditions. And the record excerpts on pages 427 and 429, you have specific references to the D-16 and the D-30 headers, which is where all of these cited violations were alleged to have occurred, and it specifically says the rock bolts are going to be the ground support system. Wire mesh can be installed as needed, but it doesn't say that it is needed. Finally... Well, 399 talks about the integrated system and references wire mesh, correct? It references wire mesh, but also the plates and the mats. So whatever is used is an integrated system, and as a practical matter, the wire mesh is held up by the bolts. But again, it doesn't mean that the wire mesh is necessary ground support. Again, if you take it away, you're not compromising the ground support system. All you're having to do is putting an additional burden on the miners to scale more. That means it's not necessary as a matter of law. They're swatting at a fly with a baseball bat in this case. They are alleging a violation of a safety standard that was not designed to ensure the maintenance of wire mesh. We ask that the citations be vacated and the decision be vacated. Thank you. Thank you both for your presentations. The case just argued will be submitted for decision, and thanks for coming to Alaska to argue. Thanks for having us.
judges: Thomas, Callahan, Bea